UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

AKINKUNLE KAYODE,

**DOCKET NO.:**

Plaintiff,

-against-

**COMPLAINT**

COUNTY OF NASSAU, NASSAU COUNTY POLICE
DEPARTMENT, NASSAU COUNTY POLICE OFFICER
BRIAN MCLAUGHLIN, in his individual and official
capacity, NASSAU COUNTY POLICE OFFICER
CHRISTOPHER BLACK, in his individual and official
capacity, and NASSAU COUNTY POLICE OFFICER
JOHN DOES #1-10 (fictitiously named),

**Plaintiff Demands a Trial
by Jury**

Defendants.

-------------------------------------------------------------------- X

Plaintiff, AKINKUNLE KAYODE, by his attorneys, THE RUSSELL FRIEDMAN LAW

GROUP, LLP, complaining of Defendants COUNTY OF NASSAU, NASSAU COUNTY

POLICE DEPARTMENT, NASSAU COUNTY POLICE OFFICER BRIAN MCLAUGHLIN,

NASSAU COUNTY POLICE OFFICER CHRISTOPHER BLACK, and NASSAU COUNTY

POLICE OFFICER JOHN DOES #1-10 (fictitiously named) (hereinafter, collectively referred to

as "Defendants"), respectfully alleges as follows:

### NATURE OF ACTION

1.     This is an action for deprivation of Plaintiff's civil rights, committed by Defendants

while acting in concert and under color of state law, of Plaintiff's rights, liberties, and immunities

as guaranteed to him by reason of the Fourth and Fourteenth Amendments to the United States

Constitution. This Court is authorized to grant Plaintiff relief under 42 U.S.C. §§ 1983 and 1988.

1

**JURISDICTION**

2.      Jurisdiction in this matter is invoked in accordance with 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  Plaintiff further invokes the supplemental jurisdiction of the Court to hear and decide claims arising out of the pendant state claims pursuant to 28 U.S.C. § 1376(a).

**VENUE**

3.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the County of Nassau; the actual place of employment of all of the individual Defendants is the County of Nassau in the Eastern District of New York; and the County of Nassau is within the jurisdiction of the Eastern District of New York.  The events surrounding this lawsuit occurred in the County of Nassau, in the Eastern District of New York.  Additionally, Plaintiff resides within the County of Queens, in the Eastern District of New York.

**PARTIES**

4.      Plaintiff, AKINKUNLE KAYODE (hereinafter, referred to as "KAYODE" or "Plaintiff"), is a resident of the State of New York, who lives within the Eastern District of New York.

5.      Defendant, COUNTY OF NASSAU (hereinafter, referred to as "COUNTY"), is a municipal subdivision of the State of New York, duly existing by reason of and pursuant to the laws of the State of New York.

6.      Upon information and belief, at all relevant times described herein, Defendant COUNTY, by its agents and/or employees operated, maintained, and controlled the NASSAU COUNTY POLICE DEPARTMENT.

7.     Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY POLICE DEPARTMENT (hereinafter, referred to as "NCPD") is a subdivision and/or agency of Defendant COUNTY and has an office at 1490 Franklin Avenue, Mineola, New York.

8.     Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY POLICE OFFICER BRIAN MCLAUGHLIN (hereinafter, referred to as "MCLAUGHLIN") is a police officer who is being sued in his individual and official capacity and is an employee of Defendants COUNTY and NCPD. At all relevant times described herein, MCLAUGHLIN was acting under color of state law within the scope of his employment as a police officer employed by Defendants COUNTY and NCPD, and works under the supervision, direction, and/or control of his supervisors in the NCPD.

9.     Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY POLICE OFFICER CHRISTOPHER BLACK (hereinafter, referred to as "BLACK") is a police officer who is being sued in his individual and official capacity and is an employee of Defendants COUNTY and NCPD. At all relevant times described herein, BLACK was acting under color of state law within the scope of his employment as a police officer employed by Defendants COUNTY and NCPD, and works under the supervision, direction, and/or control of his supervisors in the NCPD.

10.    Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY POLICE OFFICER JOHN DOES #1-10 (hereinafter, referred to as "PO JOHN DOES") are police officers who are yet unknown and are being sued in their individual and official capacities and are employees of Defendants COUNTY and NCPD. At all relevant times described herein, PO JOHN DOES were acting under color of state law within the scope of their

employment as police officers employed by Defendants COUNTY and NCPD, and work under the supervision, direction, and/or control of their supervisors in the NCPD.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

11.     Plaintiff served a Notice of Claim upon COUNTY on July 25, 2022, within ninety days of the events giving rise to his claims.

12.     Defendants waived their right for an examination pursuant to § 50-h of the New York General Municipal Law.

13.     More than thirty days have elapsed since Plaintiff served his Notice of Claim and Defendants have not offered adjustment or payment thereof.

## FACTUAL ALLEGATIONS

14.     On or about April 26, 2022, KAYODE was lawfully driving his motor vehicle.

15.     On the aforementioned date, KAYODE was driving lawfully with his seatbelt on, not speeding and/or driving erratically on Green Acres Rd in Valley Stream, County of Nassau, State of New York.

16.     While driving on the aforementioned public highway at approximately 3:25 P.M., KAYODE was pulled over by two plain-clothed Nassau County Police Officers, MCLAUGHLIN and/or BLACK and/or PO JOHN DOES, without probable cause or reason to believe an infraction had been committed.

17.     Upon being pulled over, MCLAUGHLIN and/or BLACK and/or PO JOHN DOES asked KAYODE where he got his inspection sticker.

18.     KAYODE informed MCLAUGHLIN and/or BLACK and/or PO JOHN DOES that he got it from his mechanic in Queens.

19.     MCLAUGHLIN and/or BLACK and/or PO JOHN DOES then proceeded to arrest KAYODE and charged him with felony possession of a forged instrument and three traffic infractions.

20.     In effectuating the arrest, MCLAUGHLIN and/or BLACK and/or PO JOHN DOES were acting under the color of law.

21.     There was no legitimate basis and/or lawful authority for the arrest of KAYODE nor the pulling over of his vehicle.

22.     The following day, April 27, 2022, Plaintiff was given an adjournment in contemplation of dismissal for all the charges, which were subsequently dismissed.

23.     KAYODE was deprived of his liberty, caused to suffer economic hardship, mental anguish, pain and suffering, exposed to disgrace, public humiliation, and embarrassment.

24.     The above conduct has been and is known to COUNTY. Despite this knowledge, COUNTY has failed to take any action.

### AS AND FOR A FIRST COUNT
**42 U.S.C. § 1983 – False Arrest**
**(Against Defendant Officers)**

25.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

26.     That the aforesaid arrest and imprisonment of Plaintiff by Defendants was under the color of State Law, without any reasonable cause or belief that Plaintiff was in fact guilty of the crime for which he was charged.

27.     That said Defendants, their agents, servants, and employees falsely arrested and illegally imprisoned Plaintiff and intentionally subjected Plaintiff to confinement which Plaintiff was conscious of, and said confinement was not otherwise privileged or consented to by Plaintiff.

28.     That by reason of the aforesaid unlawful arrest and imprisonment, caused willfully and maliciously by Defendants, their agents, servants, or employees, Plaintiff was wrongfully deprived of his rights and privileges and benefits as provided to him under the Constitution of the United States of America, was subjected to pain and suffering, great indignities, ridicule, scorn, loss of freedom, humiliation, mental distress, was prevented from attending his usual activities was injured in his reputation in the community, and was further caused to incur monetary expense, including legal fees.

29.     That the aforesaid false arrest and imprisonment of Plaintiff violated the Fourth Amendment of the United States Constitution.

30.     That Defendants committed the foregoing acts willfully and with malicious disregard for Plaintiff's rights and are, therefore, liable to Plaintiff for compensatory as well as punitive damages.

31.     As a proximate result of Defendants' intentional and malicious actions, Plaintiff was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages, attorney's fees, and costs.

## AS AND FOR A SECOND COUNT
### 42 U.S.C. § 1983 – Malicious Prosecution
### (Against Defendant Officers)

32.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

33.     That Defendants instituted and continued the criminal proceedings against Plaintiff in the absence of any probable cause and/or evidence for said prosecution.

34.     That the prosecution against Plaintiff was with malice.

35.     That the dismissal against Plaintiff was a favorable termination in favor of Plaintiff.

36.     That said malicious prosecution of Plaintiff by Defendants constitutes a deprivation of Plaintiff's Fourth Amendment Constitutional right.

37.     As a proximate result of Defendants' intentional and malicious actions, Plaintiff was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages, attorney's fees, and costs.

## AS AND FOR A THIRD COUNT
### 42 U.S.C. § 1983 – Failure to Intervene
### (Against All Defendants)

38.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

39.     On or about September 15, 2019, Plaintiff was subjected to false arrest and unlawful search and seizure of Plaintiff's person at the hands of Defendants.

40.     Despite Defendants having irrefutable evidence of Plaintiff's innocence, Defendants nonetheless arrested Plaintiff.

41.     Each of the Defendants new and/or deliberatively ignored the fact that the false accusations, detainment, false arrest, and illegal seizure violated the rights guaranteed to Plaintiff under the Fourth and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983.

42.     Each of the said Defendants had the authority, ability, and concurrent duty under 42 U.S.C. § 1983 to prevent the false arrest, wrongful detainment, and illegal search of Plaintiff, yet neglected to prevent said violations from occurring and, further, failed to intervene to protect or aid Plaintiff when such violations did, in fact, occur.

43.     Specifically, each and every one of the Defendants had the opportunity and responsibility to prevent the wrongful detainment and abuse of process against Plaintiff because each Defendant had actual notice of the wrongful actions of the other Defendants at the scene of the incident.

44.     Defendants had the power to prevent the continued due process violations against Plaintiff yet failed to prevent or dismiss the unlawful charges against Plaintiff, or to protect Plaintiff from the unwarranted penalties that followed from the charges against him.

45.     As a direct consequence of the actions of Defendants acting in furtherance of their duties as agents of their respective municipalities and agencies, Plaintiff suffered injuries, including but not limited to, stigmatizations, embarrassment, loss of liberty, and the infringement of his rights guaranteed to him under the U.S. Constitution.

46.     As a direct consequence of the actions of Defendants, Plaintiff KAYODE suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, damage to his name and reputation, special damages, attorney's fees, incidental fees/costs, and other financial impairments.

47.     That, by reason of the foregoing, Plaintiff KAYODE suffered and continues to suffer irreparable injury and monetary damages, was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, attorneys' fees, and costs.

### AS AND FOR A FOURTH COUNT
*Monell*
**(Against Defendant County)**

48.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

**Failure to Supervise and Failure to Train**

49.     Defendant County was responsible for supervising, overseeing, and controlling its respective subordinates.

50.     Defendant County had an express and/or implied duty to provide a reasonably safe environment for its citizens, including Plaintiff. At a minimum, it had a duty to keep him from being falsely arrested and maliciously prosecuted by its employees, which was foreseeable based upon past instances of misconduct, which were known to Defendant County.

51.     Defendant County had an express and/or implied duty to provide a reasonably safe environment for its citizens, including Plaintiff. At a minimum, it had a duty to assure that its employees did not wrongfully and falsely arrest Plaintiff, which was foreseeable based upon past instances of misconduct, which were known to Defendant County.

52.     Despite having this knowledge, Defendant County failed to take any remedial measures to prevent the aforementioned violations of Plaintiff's Constitutional rights.

53.     The countenancing of this behavior created an environment within the NCPD wherein members were allowed to continue with their behavior, which led to the Constitutional rights of citizens being violated, including Plaintiff.

54.     Defendant County intentionally failed to adequately supervise, control, oversee, train, and/or monitor its employees and members, who had a history of engaging in official misconduct, and failed to implement measures to prevent its employees and members from conspiring with each other to cover up their official misconduct.

55.     Defendant County intentionally failed to adequately supervise, control, oversee, train, and/or monitor its employees and members from conspiring with each other to cover up their official misconduct and prevent them from continuously violating the Constitutional rights of individual citizens, including Plaintiff.

56.     Defendant County negligently hired, retained, and/or supervised its employees and members when it knew or should have known that they posed a threat to individuals.

57.     Defendant County knew or should have known of its employees and members' propensity for the conduct which caused Plaintiff's injuries, prior to the occurrence of the injuries.

58.     At all times relevant hereto, Defendants' actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

59.    Defendant County was aware that there was a substantial likelihood that permitting its employees and members to carry on their regular duties would deprive the public of their civil rights, but failed to take adequate measures to resolve the wrong.

60.    Defendant County's failure and refusal to adequately investigate its employees' actions, acquiescence in Defendants' conduct, failure to take any remedial action against Defendants, allowing Defendants to remain employed as police officers, gross negligence in its supervision of Defendants, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated, subjects Defendant County to supervisory liability for the crime and Constitutional violations perpetrated against Plaintiff.

61.    That, by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), as well as costs and attorneys' fees, and any other relief this Court may find just and proper.

**Custom, Policy, and Practice**

62.    It was the custom, policy, and practice of Defendant County to tolerate, condone, and encourage constitutional violations, such as those alleged by Plaintiff above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by its employees and members.

63.    Employees and members of the County, such as the Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for

their conduct.

64.     Employees of County, such as the Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

65.     By failing to supervise, train, and reprimand such County employees and members of NCPD caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

66.     By maintaining a *de facto* policy of automatic indemnification, Defendant County caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

67.     It was the custom, policy, and practice of Defendant County to blatantly ignore complaints and/or widespread allegations of malfeasance in order to shield the NCPD from receiving any bad press that would be generated from an investigation of police misconduct and/or misconduct by assistant district attorneys.

68.     This custom, policy, and practice of Defendant County to ignore complaints and/or widespread allegations of assault and other malfeasance created an environment where foreseeable constitutional violations by their employees and members were rampant, including the violations of Plaintiff's constitutional rights.

69.     Defendant County's failure to take action against its employees and members involved in this incident and in other similar incidents was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

70.     As authorized representatives of Defendant County, the employees and members'

conduct of illegal arrests or threats of arrest without probable or reasonable cause, searches and seizure of arrestees, and malicious prosecutions constituted a custom, policy, and practice which renders Defendant County liable to Plaintiff as a "Person" acting under the color of state law.

71.    Defendant County is, therefore, liable for violations of Plaintiff's constitutional rights as caused by the Individual Defendants, as described in more detail in the foregoing paragraphs, and Plaintiff has suffered damages therefrom.

72.    That, by virtue of Defendant County's failure and refusal to adequately investigate the Individual Defendants' actions, acquiescence in the Individual Defendants' conduct, failure to take any remedial action against the Individual Defendants, allowing the Individual Defendants to remain employed, gross negligence in its supervision of the Individual Defendants, and deliberate indifference to the rights of others by failing to act on information that constitutional rights were being violated by the Individual Defendants, Defendant County, which employed these Individual Defendants and policymakers during the relevant time period, exhibited a *de facto* custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

73.    As a proximate result of Defendant County's customs, policies, and practices for creating an environment that tolerates, encourages, and condones such constitutional violations, Plaintiff was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus attorney's fees and costs.

## AS AND FOR A FIFTH COUNT
### 42 U.S.C. § 1983 – Abuse of Process
### (Against All Defendants)

74.      Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

75.      Defendants subjected Plaintiff to unlawful search and seizure without just cause or reason. Defendants abused the criminal process in falsely arresting and unlawfully and falsely searching Plaintiff, to satisfy their personal goals of covering up their wrongdoing and to further their own purposes of exercising their privilege for their own warped sense of power.

76.      Defendants lacked reasonable suspicion to stop and detain Plaintiff, and further lacked any probable cause to arrest and prosecute Plaintiff.

77.      Defendants created false and fabricated basis and statements for the purposes of unlawfully arresting Plaintiff.

78.      Defendants' use of process for the aforementioned improper purpose amounted to an abuse of said process, which was initiated and used to the detriment of Plaintiff solely for a purpose that was/is outside the legitimate ends of the legal process. The purpose behind Defendants' actions was to protect Defendants' illegal conduct and to harass, intimidate, coerce, silence, and punish Plaintiff.

79.      Defendants did not initiate the detainment, seizure, arrest, and prosecution of Plaintiff as a result of actual knowledge that a crime was committed. Defendants' clear intention was to cover up their unlawful conduct and to intimidate Plaintiff and cause harm to Plaintiff without proper motive, excuse, or justification of any kind.

80.     As a direct consequence of the actions of Defendants, acting in furtherance of their duty as agents of COUNTY, Plaintiff suffered injuries, including but not limited to, stigmatization, embarrassment, loss of liberty, and the infringement of his rights guaranteed to him under the U.S. Constitution.

81.     Defendants MCLAUGHLIN and BLACK, with the aid of other named Defendants, falsified evidence and committed perjury in order to cover up the fact that Defendants acted unlawfully.

82.     As a direct consequence of the actions of Defendants, Plaintiff suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, and loss of regular income, damage to name and reputation, special damages, incidental fees/costs, and other financial impairments.

83.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages and attorneys' fees pursuant to Title 42 § 1988.

### AS AND FOR A SIXTH COUNT
**Pendant State Claim – False Arrest/Imprisonment**
**(Against All Defendants)**

84.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

85.     Defendants caused Plaintiff to be falsely arrested/imprisoned.

86.     Defendants caused Plaintiff to be confined and intended to have Plaintiff confined.

87.     Plaintiff was conscious of the confinement, Plaintiff did not consent to the confinement, and the confinement was not otherwise privileged.

88.     That by reason of the false arrest, Plaintiff suffered damages as set forth herein.

89.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages as to the Individual Defendants.

## AS AND FOR A SEVENTH COUNT
### Pendant State Claim – Malicious Prosecution
### (Against All Defendants)

90.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

91.     Plaintiff was arraigned and charged with Possession of a forged instrument in the second degree and three traffic infractions.

92.     As a result of the malicious prosecution, Plaintiff suffered substantial financial loss.

93.     As a result of the false and unlawful charges, Plaintiff was required to make appearances in Court.

94.     Defendants participated in the investigations of allegations against Plaintiff, as well as the criminal prosecution against him.

95.     The criminal prosecution was commenced despite Defendants' knowledge that Plaintiff did not participate in the alleged crimes and that probable cause for the arrest and initiation of the prosecution did not exist.

96.     The criminal prosecution was continued after Defendants knew that they had no probable cause for the original arrest and/or initiation of the prosecution existed.

97.     By participating in the arrest and prosecution which they knew lacked probable cause, Defendants acted with malice against Plaintiff.

98.     Defendants prosecuted Plaintiff with malice independent of their lack of probable cause.

98.     The prosecution of Plaintiff was terminated favorably to him.

99.     As a result of Defendants' malicious prosecution, Plaintiff's rights were violated.

100.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages as to the Individual Defendants.

## AS AND FOR AN EIGHTH COUNT
### Pendant State Claim – Negligence
### (Against All Defendants)

101.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

102.    Defendants had a duty to prevent and cease the unlawful search and seizure, wrongful detainment, false arrest, false imprisonment, and malicious prosecution upon Plaintiff as well as a duty to hire, to train, to investigate, supervise, and discipline the Individual Defendants and prevent other wrongful acts that were committed against Plaintiff.

103.    In actively inflicting and failing to prevent the above stated abuses incurred by Plaintiff, all of the Defendants acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and constitutional rights of Plaintiff against illegal search and seizure, detained custody, false imprisonment, malicious prosecution, and other due process violations. Said rights are guaranteed to Plaintiff by 42 U.S.C. § 1983 and by the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution.

104.    The breach of duty by Defendants was a direct and proximate cause of the harm suffered by Plaintiff. Said harm includes psychological harm which continues to this day, monetary expenses, personal humiliation, damage to reputation, and loss of standing in the community.

105.    That, by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00).

## AS AND FOR A NINETH COUNT
**Pendant State Claim – Negligent Hiring, Improper Supervision, and Improper Retention
(Against Defendants COUNTY and NCDP)**

106.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

107.    Upon information and belief, it was the custom, policy, and practice of Defendants COUNTY and NCPD to hire certain police officers and supervisors, including the Individual Defendants, without conducting the appropriate background check, investigation, and psychological evaluations.

108.    Upon information and belief, it was the custom, policy, and practice of Defendants COUNTY and NCPD to conduct inadequate investigations of police officers and supervisor candidates as was done with the Individual Defendants.

109.    Upon information and belief, it was the custom, policy, and practice of Defendants COUNTY and NCPD to inadequately supervise the actions and conduct of police officers and supervisors, including the Individual Defendants.

110.    Upon information and belief, it was the custom, policy, and practice of Defendants COUNTY and NCPD to continue to employ police officers and supervisors, including the

Individual Defendants, after it is known that such police officers and supervisors consistently violate the constitutional rights of persons such as Plaintiff.

111.   These customs, policies, and practices were the moving force, proximate cause, or affirmative link behind the conduct causing Plaintiff's injuries.

112.   Defendants COUNTY and NCPD are therefore liable for violations of Plaintiff's constitutional rights, as caused by Defendants, as described in more detail in the foregoing paragraphs, and Plaintiff has suffered damages therefrom.

113.   As a proximate result of Defendants' customs, policies, and practices for negligent hiring, improper supervision, and improper retention of police officers and supervisors, Plaintiff was greatly humiliated, injured in his reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage, in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00).

### AS AND FOR A TENTH COUNT
**Pendant State Claim – *Respondeat Superior***
**(Against Defendants COUNTY and NCPD)**

114.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

115.   By virtue of Defendant Officers' employment with Defendants COUNTY and NCPD and their actions within the scope of their employment, Defendants are liable for Defendant Officers' actions under a theory of *respondeat superior*.

116.   As a result of the above-described conduct, Plaintiff was caused to be unlawfully seized, falsely arrested and imprisoned, maliciously prosecuted, placed in substantial fear for his

life, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00).

**AS AND FOR AN ELEVENTH COUNT**
**42 U.S.C. § 1981 –Racial Profiling and Racial Discrimination**
**(Against All Defendants)**

117.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

118.   Defendants, acting under the color of state law, both collectively and individually, have engaged in actions and abuses which have deprived Plaintiff of his rights, privileges, and immunities secured by the United States Constitution, including but not limited to, rights secured by the Fourth, Fifth, and Fourteenth Amendments and other laws in violation of 42 U.S.C. § 1983.

119.   Plaintiff was stopped on Green Acres Rd in Valley Stream not because he had committed any crime, but because Plaintiff was profiled and arrested on account of being African American.

120.   This was a clear violation of Plaintiff's due process rights protected by the Fourth, Fifth, and Fourteenth Amendments.

121.   As a direct consequence of the actions of Defendants, Plaintiff suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, and loss of regular income, damage to name and reputation, special damages, incidental fees/costs, and other financial impairments.

122.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages and attorneys' fees pursuant to Title 42 § 1988.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands the following relief:

A.    Under the FIRST CAUSE OF ACTION, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorney's fees;

B.    Under the SECOND CAUSE OF ACTION, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorney's fees;

C.    Under the THIRD CAUSE OF ACTION, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorney's fees;

D.    Under the FOURTH CAUSE OF ACTION, in the amount of ONE MILLION ($1,000,000.00) DOLLARS attorney's fees;

E.    Under the FIFTH CAUSE OF ACTION, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorney's fees;

F.    Under the SIXTH CAUSE OF ACTION, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages;

G.    Under the SEVENTH CAUSE OF ACTION, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages;

H.    Under the EIGHTH CAUSE OF ACTION, in the amount of ONE MILLION ($1,000,000.00) DOLLARS;

I.    Under the NINTH CAUSE OF ACTION, in the amount of ONE MILLION ($1,000,000.00) DOLLARS;

J.      Under the TENTH CAUSE OF ACTION, in the amount of ONE MILLION

($1,000,000.00) DOLLARS;

K.      Under the ELEVENTH CAUSE OF ACTION, in the amount of ONE MILLION

($1,000,000.00) DOLLARS plus punitive damages and attorney's fees;

L.      Costs and disbursements of this action; and

M.      Such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
          July 24, 2023


                                    Respectfully Submitted,
                                    **THE RUSSELL FRIEDMAN LAW GROUP, LLP**
                                    *Attorneys for Plaintiff*

                    By:      /s/ *Spencer D. Shapiro*
                                    Spencer D. Shapiro
                                    400 Garden City Plaza, Suite 500
                                    Garden City, New York 11530
                                    Tel: 516.355.9696